## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| SONDRA CASH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. 4:11-cv-105-TWP-WGH |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Sondra Cash ("Ms. Cash"), requests judicial review of the decision of Defendant, Michael J. Astrue, Commissioner of Social Security Administration ("the Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is **REMANDED** for further proceedings consistent with this opinion.

### I. PROCEDURAL HISTORY

Ms. Cash seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to DIB or SSI under the Social Security Act ("the Act"). 42 U.S.C. '' 416(i), 423(d), 1381; 20 C.F.R. ' 404.1520(f). This Court has jurisdiction over this action pursuant to 42 U.S.C. '' 405(g), 1383(c)(3).

Ms. Cash applied for DIB and SSI on December 7, 2007, respectively, alleging disability since November 16, 2007. (R. at 120-22, 123-29.) Ms. Cash was 53 at the time of the alleged onset date. (R. at 120.) The agency denied Ms. Cash's application both initially and on reconsideration. (R. at 51.) Ms. Cash appeared and testified at a hearing before Administrative Law Judge Samuel A. Rodner ("the ALJ") on January 22, 2010. (R. at 1-37.) Janet Rogers, a

vocational expert ("the VE"), testified at the hearing. (R. at 30-35.) On June 9, 2010, the ALJ issued his opinion finding that Ms. Cash was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy, including her past relevant work as a housekeeper and residential care giver. (R. at 51-57.) The Appeals Council denied review of the ALJ's decision on August 11, 2011 (R. at 38-43), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (2012). Ms. Cash then filed a Complaint on September 1, 2011, seeking judicial review of the ALJ's decision.

## II.  STATEMENT OF THE FACTS

### A.  Vocational Profile

Ms. Cash was 55 at the time of the ALJ's decision and only completed her education through the eighth grade. (R. at 123; R. at 9-10, 168.) She previously worked as a nursing home housekeeper from 1999 to 2002 and worked as a residential living instructor/care giver from April 2002 to November 2007. (R. at 10, 13, 164.) From June 2008 to September 2008, Ms. Cash worked part-time as a housekeeper in an office and she reported that she lost her job when she broke her ankle. (R. at 8-9.)

### B.  Medical Evidence

#### 1.  Ms. Cash=s Mental Impairments[1]

The record contains Ms. Cash=s school records, including the results of IQ testing in the fourth and eighth grades. (R. at 285-86). In the fourth grade, her IQ was listed as 66. (R. at 285.) Ms. Cash had her IQ tested again four years later, which resulted with a verbal IQ of 71; non-verbal

---

[1] As Ms. Cash only challenges the ALJ=s decision that her mental impairment did not meet Listing 12.05 for mental retardation (20 C.F.R. AT Part 404, Subpart P, Appendix 1), her physical impairments are not relevant to the court=s analysis, and we need not list the medical evidence concerning those physical impairments in detail here.

IQ of 82; and a total IQ of 77. (R. at 286.) School records indicate that Ms. Cash completed the eighth grade with grades ranging from B to F; there is no evidence in the school's records that she was in special education classes. (R. at 281-286.)

Later, in April 2008, Ms. Cash underwent a psychological evaluation in connection with her DIB and SSI claims. Ms. Cash was examined by psychologist Christopher Scruton, Ph.D. ("Dr. Scruton"), at the request of the Social Security Administration. (R.at 342-47). Dr. Scruton administered the Wechsler Adult Intelligence ScaleB3 ("WAIS-3") test to Ms. Cash. (R. at 345). Dr. Scruton noted that Ms. Cash=s "effort and cooperation were adequate to suggest that the results reported below are valid." (*Id*.). Ms. Cash's test resulted in a verbal IQ of 69, a performance IQ of 80, and a full scale IQ of 72. (*Id*.). Dr. Scruton added that Ms. Cash's history of learning disability, including special education services through most of her schooling, was consistent with her test scores. (R. at 346). Dr. Scruton wrote that Ms. Cash correctly answered items involving addition, subtraction, and multiplication, but he wrote nothing about division. (R. at 343). Ms. Cash could not do serial 7s at all. (*Id*.). When asked to count backwards from 20 by three, she took 40 seconds and gave six correct answers and one incorrect answer. (*Id.*). Ms. Cash knew that there are 12 months in a year, but did not know from which direction the sun rises and did not know how many weeks there are in a year. (R. at 344).

Upon mental status examination, she demonstrated normal mood with no depressive symptoms. (*Id.*). While she demonstrated a below average vocabulary and expression ability, her articulation was adequate and she demonstrated no difficulty conveying her thoughts. (*Id*.). Regarding her daily living activities, Ms. Cash reported that she independently managed her finances, shopped for groceries, drove, did all household chores, and watched her two-year-old and four-year-old grandchildren while her daughter was working. (R. at 345). Dr. Scruton indicated that Ms. Cash=s scores suggested she was functioning in the borderline deficient range of overall

3

intelligence with mildly deficient verbal reasoning and low-average nonverbal reasoning. (R. at 345). However, despite her IQ scores falling in the borderline deficient range, Dr. Scruton believed that Ms. Cash was at a higher functioning than borderline intellectual functioning on account of the significant discrepancy between her verbal and non-verbal performance and her history of competence in meeting adult responsibilities without assistance. (R. at 346). As such, Dr. Scruton diagnosed Ms. Cash as having a reading disorder, by history, and an adjustment disorder with depressed mood. (R. at 346). In his conclusion, Dr. Scruton wrote that Ms. Cash "reports being able to manage adult responsibilities without assistance," and he assigned a Global Assessment of Functioning ("GAF") score of 55. (R. at 346).

### 2. State Agency Review

In mid-December 2007, prior to Dr. Scruton's assessment, Ms. Cash completed a daily activities questionnaire at the request of the state agency. (R. at 195-201). She explicitly indicated that no one helped her fill out the form. (R. at 198). She described her daily living activities as cooking, doing laundry, driving, cleaning her house, and engaging in hobbies. (R. at 196). In January 2008, a state agency reviewing psychologist, J. Gange, Ph.D. ("Dr. Gange"), reviewed the record and opined that Ms. Cash had no medically determinable mental impairments. (R. at 318). This Psychiatric Review Technique was the Exhibit 4F which the ALJ consulted with in his determination of Ms. Cash=s mental impairments. (R. at 54). Dr. Gange cited Ms. Cash=s reports that her physical condition was the source of her disability and that she had no limiting mental condition. (R. at 330).

After Dr. Scruton concluded that Ms. Cash did not meet any of the listings, Dr. Gange reviewed his findings. (R. at 348). With the updated record, including Dr. Scruton's consultative report, Dr. Gange opined that while Ms. Cash had a reading disorder and adjustment disorder, neither was a severe impairment. (R. at 348-51). Dr. Gange found Ms. Cash to have no limitations

in daily living activities or in social functioning; only mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. (R. at 358). Dr. Gange noted Ms. Cash's WAIS-3 scores and Dr. Scruton's assessment that Ms. Cash's independent adult functioning suggested higher functioning than borderline intellectual functioning. (R. at 360). He also noted Ms. Cash's independent and varied daily living activities and her work history all suggested "a much higher level of adaptive functioning than would be predicted by the recent test scores." (*Id.*). As such, Dr. Scruton concluded that Ms. Cash had a non-severe mental impairment. (*Id.*). In August 2008, William A. Shipley, Ph.D., another state agency reviewing psychologist, reviewed the record and affirmed Dr. Gange's assessment. (R. at 379).

### III.  STANDARD OF REVIEW

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation omitted); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  STANDARD FOR DISABILITY

In order to qualify for disability benefits under the Act, Ms. Cash must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage

5

in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. ' 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. ' 404.1520 (2012). The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Ms. Cash during steps one through four, and only after Ms. Cash has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V. THE ALJ=S DECISION

The ALJ=s decision included the following findings: (1) Ms. Cash met the insured status for DIB and SSI through March 31, 2013 (R. at 53); (2) Ms. Cash had not engaged in substantial gainful activity since the alleged onset date (*Id.*); (3) in accordance with 20 C.F.R. ' 404.1520, Ms. Cash suffered from severe impairments: diabetes mellitus, type II; morbid obesity; mild to moderate degenerative joint disease of the left thumb; and bursitis of the shoulders bilaterally (*id.*); (4) these impairments did not meet or substantially equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) (R. at 54); (5) the ALJ found that the claimant=s RFC involved the ability to perform work activity, except as follows: she can lift/carry 50 pounds occasionally and 25 pounds frequently; she can stand/walk six hours in an eight-hour work day, assuming normal breaks; she can sit the same

amount of time; she cannot reach with her shoulders more than three-fourths overhead; despite the stiff left thumb, the claimant is otherwise able to fist with her left hand, is able to dress herself, can button most of the time, can write with a pen/pencil, can drive, and drive alone with hands holding the steering wheel (R. at 55-56); (6) Ms. Cash is capable of performing past relevant work as a housekeeper and residential care giver (R. at 56-57); and (7) Ms. Cash has not been under a disability, as defined in the Act, from November 16, 2007, through the date of this decision. (R. at 57). The ALJ concluded by finding that Ms. Cash was not under a disability. (R. at 57).

## VI. ISSUES

Ms. Cash has raised three issues. The issues are as follows:

**A.        Whether Ms. Cash=s mental impairments were "severe."**

Ms. Cash=s first argument is that the ALJ committed error at step two of the five-step sequential evaluation process by finding that Ms. Cash does not have a severe mental impairment. (Plaintiff's Brief 9.) As discussed above, 20 C.F.R. ' 404.1520 provides a five-step evaluation process. Step two of that process involves determining if an individual has a severe impairment. Step two is simply an initial screening device to eliminate consideration of individuals who have only slight impairments. *Taylor v. Schweiker*, 739 F.2d 1240, 1243 n.2 (7th Cir. 1984). As then-District Judge David Hamilton explained:

> As long as the ALJ proceeds beyond step two, as in this case, no reversible error could result solely from his failure to label a single impairment as "severe." The ALJ=s classification of an impairment as "severe" or "not severe" is largely irrelevant past step two. What matters is that the ALJ considers the impact of all of the claimant=s impairments—"severe" and "not severe"—on her ability to work.

*Gordon v. Astrue*, 2007 WL 4150328 at *7 (S.D. Ind. 2007).

In this instance, the ALJ analyzed Ms. Cash=s mental impairments and overall functioning and found that Ms. Cash had only mild limitation in concentration, persistence, or pace and had

taken anti-depressants only from time to time. (R. at 54). Finding no more than a minimal impact on Ms. Cash=s ability to do work-related activities, the ALJ concluded that there was no severe mental impairment contained in the record. (*Id.*).

Ms. Cash argues that the ALJ "simply overlooked" the IQ testing conducted by Dr. Scruton, the results of which Ms. Cash alleges indicate a severe mental impairment. (Plaintiff's Brief 10, 12-14; Reply Brief 2). Given the existence of three separate IQ tests in the record—two of which indicate an IQ of between 60 and 70—it is troubling that the ALJ did not explicitly mention the IQ testing. He did cite to state agency psychologist J. Gange, Ph.D.'s assessment dated "January 14, 2008 (Exhibit 4F R)." However, Dr. Gange does not consider Ms. Cash=s IQ testing scores and states only: "Clmt reports she takes paxil as a sleep aid. Clmt denies any currently limiting mental condition. She reports physical condition is the source of her disability." (R. at 54, 330). The citation does not demonstrate that the ALJ actually considered and weighed evidence involving Ms. Cash=s IQ testing. It must be noted that another portion of the record (R. at 348-60) contains another evaluation by Dr. Gange which finds a "non-severe mental impairment." (R. at 360). However, that is not the evaluation referenced by the ALJ.

At this point in the five-step analysis, the court concludes that as long as the ALJ considered Ms. Cash's mental condition later, there is no reversible error in failing to describe the mental impairment as "severe" at step two.

**B.     Whether Ms. Cash=s impairments meet Listing 12.05.**

Second, Ms. Cash argues that the ALJ should have found that her mental impairments met Listing 12.05 in 20 C.F.R. Part 404, Subpart P, Appendix 1. That particular Listing provides as follows:

> 12.05   Mental retardation:   Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or

8

supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

    A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or

    B. A valid verbal, performance, or full scale IQ of 59 or less; or

    C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or

    D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

        1. Marked restriction of activities of daily living; or

        2. Marked difficulties in maintaining social functioning; or

        3. Marked difficulties in maintaining concentration, persistence, or pace; or

        4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1. The introduction to Listing 12.00, the group of Mental Disorders (20 C.F.R. Part 404, Subpart P, Appendix 1), further provides that Listing 12.05 for Mental Retardation is different from the other listings. In order to meet Listing 12.05, an individual's impairment must first satisfy the "diagnostic description" in 12.05=s introductory paragraph and must then meet one of the four sets of criteria listed in sections A, B, C, and D. *Id*. In order for an individual to be disabled under a particular listing, her impairment must meet each distinct element within the listing. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). And, it is important to remember that, at step three, the burden rests on Ms. Cash to demonstrate that she meets the listing. In addition, the Seventh Circuit requires that the ALJ "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Garcia v. Astrue*, 2008

9

WL 1771856 (N.D. Ind. 2008), *citing*, *Pope v. Shalala*, 998 F.2d 473, 481 (7th Cir. 1993).

In this case, Ms. Cash argues that the ALJ failed to analyze whether she meets a relevant listing. Again, the Court must observe that this ALJ did not specifically discuss Listing 12.05. The only reference to mental impairments can be found when the ALJ simply stated the correct standard for an individual to demonstrate that her impairment meets the "B" criteria necessary to be present for Listing 12.05D. (R. at 54). The ALJ correctly paraphrased the requirement that Ms. Cash must first meet the "diagnostic description" of Listing 12.05D when he stated that Ms. Cash "does not have a severe mental impairment." (R. at 56). In doing so, the ALJ satisfied the required mental retardation analysis only pursuant to Listing 12.05D and does not address Listing 12.05C.

The Seventh Circuit has explained that Listing 12.05 clearly requires findings of both "significantly subaverage intellectual functioning" and deficits in adaptive functioning that both manifest themselves prior to age 22. *Novy v. Astrue*, 497 F.3d 708, 709-10 (7th Cir. 2007). "The requirements of early onset and the reference to the claimant's 'developmental period' seem intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Id*. at 709 (internal quotations omitted). Furthermore, the Seventh Circuit in *Novy* explained that the term "deficit in adaptive functioning" refers to an "inability to cope with the challenges of ordinary everyday life." *Novy*, 497 F.3d at 710.

The record indicates that Ms. Cash had significantly subaverage general intellectual functioning with deficits in adaptive functioning in that she completed only the eighth grade with grades B through F. (R. at 281-86). She reports having received special education services throughout her schooling. (R. at 346). In addition, the ALJ found that Ms. Cash has additional physical impairments imposing an additional and significant work-related limitation of function—specifically, that Ms. Cash was morbidly obese, that Ms. Cash cannot reach with her

shoulders more than three-fourths overhead, and she has a "stiff left thumb." These physical impairments may or may not impose "an additional and significant work-related limitation of function" as required by Listing 12.05C. However, no express analysis of these conditions has been made in the context of a 12.05C analysis. The ALJ concluded that Ms. Cash could return to work as a "housekeeper" and "residential care giver" – both of which likely require some amount of physical exertion with shoulders and hands. Whether these physical impairments will be sufficient to meet the listing remains within the good judgment of the ALJ on remand.

Given the lack of specific discussion of Listing 12.05C, the clear existence of IQ scores not discussed, the reference only to the "January 14, 2008" Dr. Gange report, and the existence of some other physical limitations which *could* be considered additional impairments, this Court cannot determine whether the ALJ did, in fact, consider Listing 12.05C in this instance and believes the case should be remanded for a more completely articulated analysis of whether Ms. Cash does meet Listing 12.05C.

## VII. <u>CONCLUSION</u>[2]

While mindful of the difficult case load faced by ALJs and the professionally prepared opinion which is reviewed, the Commissioner's decision must be remanded for consideration of

---

[2] With this level of intellectual functioning, Ms. Cash appeared at her hearing without counsel. The ALJ obtained a waiver of counsel by explaining to Ms. Cash how counsel could have assisted her. (R. 4-6). However, the ALJ failed to explain that counsel could have been obtained for free or on a contingency basis, and he neglected to explain that attorney=s fees would have been limited to 25% of past-due benefits. Thus, the waiver of counsel by a person with some significant educational difficulties was not at a level that meets best practices required under 7th Circuit precedent. *See, e.g.*, *Thompson v. Sullivan*, 933 F.2d 581, 583-85 (7th Cir. 1991). However, the court in *Thompson* did not hold that the failure to properly advise the right to counsel *per se* necessitated a reversal of the ALJ's decision. Unlike in *Thompson* (*Id.* at 585-88), the ALJ in this case fulfilled his obligation to develop a "full and fair record." *Id.* at 585 (internal quotation omitted). Nonetheless, Ms. Cash is encouraged to seek counsel to assist her on remand.

whether Ms. Cash=s mental impairment meets Listing 12.05C. The final decision of the Commissioner is, therefore, **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED: 09/18/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy J. Vrana
tim@timvrana.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov